IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CAROLYN R.,[1]<br><br>　　　　Plaintiff,<br>　v.<br><br>COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,<br><br>　　　　Defendant. | Case No.: 6:23-cv-01595-AN<br><br>OPINION AND ORDER |

　　　　Carolyn R. ("Plaintiff") brings this action seeking judicial review of the Commissioner of the Social Security Administration's ("Commissioner") denial of her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The Court has jurisdiction over Plaintiff's appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons explained below, the Court affirms the Commissioner's decision.

## BACKGROUND

### I.　　Plaintiff's Application

　　　　Plaintiff was born on June 3, 1963, making her 55 years old on her alleged onset date of November 1, 2018. Tr. 139. Plaintiff has a high school education, with one year of college, and past relevant work as a receptionist, payroll clerk, chief, floor manager, and cashier checker. Tr. 25-26, 417. In her application, Plaintiff alleges disability due to "COPD, lupus, fibro, arthritis." Tr. 139.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.

The Commissioner denied Plaintiff's applications initially and upon reconsideration. Tr. 146, 155, 167, 177. On July 2, 2021, Plaintiff appeared with counsel for a hearing before Administrative Law Judge ("ALJ") Mark Triplett. Tr. 69-102. On July 26, 2021, the ALJ issued a written opinion, finding Plaintiff not disabled. Tr. 179-92. The Appeals Council remanded the case for further proceedings. Tr. 195-97. A second hearing was held on December 21, 2022, and, on February 24, 2023, the ALJ issued a written opinion finding Plaintiff not disabled. Tr. 17-26, 103-36. Plaintiff now seeks judicial review of the ALJ's final decision.

## II.     Sequential Disability Evaluation

The Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step sequential procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the burden for steps one through four, and then the burden shifts to the Commissioner at step five. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

The five-step evaluation requires the ALJ to determine: (1) whether a claimant is "doing substantial gainful [work] activity"; (2) whether the claimant has a "medically determinable physical or mental impairment" or combination of impairments that is severe and either lasts at least a year or can be expected to result in death; (3) whether the severity of the claimant's impairments meets or equals one of the various impairments specifically listed by Commissioner; (4) whether the claimant's residual functional capacity ("RFC") allows the claimant to perform her past relevant work; and (5) whether, given the claimant's RFC, age, education, and work experience, the claimant can make an adjustment to other work that "exists

in significant numbers in the national economy." 20 C.F.R. §§ 404.1520(a), 416.920(a).

## III.     The ALJ's Decision

At step one, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2024, and that Plaintiff had engaged in substantial gainful activity from October 2021 through September 2022. Tr. 19. At step two, the ALJ determined that Plaintiff suffered from the following severe, medically determinable impairments: lupus and COPD. Tr. 20. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or equals a listed impairment. Tr. 21. The ALJ then concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a), with the following limitations:

> [She] can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. [She] can frequently stoop, kneel, crouch, and crawl. [She] can tolerate no exposure to atmospheric conditions as defined in Selective Characteristics of Occupations. [She] can tolerate occasional exposure to workplace hazards such as unprotected heights and exposed, moving machinery.

*Id*. At step four, the ALJ found that Plaintiff has past relevant work as receptionist, payroll clerk, chief, floor manager, and cashier checker. Tr. 26.  At step five, because the ALJ found that Plaintiff could perform her past relevant work, the ALJ did not make alternative step five findings. *Id*. Therefore, the ALJ concluded that Plaintiff is not disabled. *Id*.

## STANDARD OF REVIEW

The district court may set aside the Commissioner's denial of benefits only if the ALJ's findings are "'not supported by substantial evidence or is based in legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). The district court "cannot affirm the [ALJ's] decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record. *Id.* Where the record as a whole can support either the grant or denial of benefits, the district court "'may not substitute [its] judgment for the ALJ's.'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) failing to provide specific, clear and convincing reasons to reject her symptom testimony; (2) improperly rejecting the medical opinion of Rachel Elsasser, D.O.; and (3) improperly rejecting the lay witness testimony of plaintiff's daughter.

### I. Subjective Symptom Testimony

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At her first hearing, Plaintiff testified that she could not work on a regular, full-time basis because she experiences such extreme fatigue that taking a shower takes all of her energy for the day, and she is in constant pain. Tr. 1078. She explained that she cannot stand long enough to shower, that washing her hair and getting dressed make her exhausted, and if she showers and dresses without taking a break she would need to lie down. Tr. 1078-79. She further testified that she also experiences some degree of brain fog, she rarely drives, and that her daughter is the driver. Tr. 1071, 1078. When asked how long she would be able to sit or stand, she testified that she mostly stays in reclined positions to ease the pain, that she can usually sit for 10-15 minutes before needing to change position, and that she spends her entire day either

reclining or lying down. Tr. 1080. Plaintiff then stated that she uses a walker to attend doctor's appointments and when shopping, but that she will sometimes lean on a shopping cart for support or use a riding cart if available. Tr. 1080-81. Plaintiff continued, stating she has a broken rib or non-union fracture for which surgery was not approved by her insurance, and that she is not taking any pain medication for it because it makes her feel "yucky." Tr. 1082-83. When asked about treatment, she stated that her muscle weakness has only gotten worse, that physical therapy was not effective, and that the steroids she has been prescribed cause brain fog. Tr. 1084-86. When questioned about her daily activities, she stated she no longer engages in her hobbies, that she cannot stand long enough to do dishes, that her daughter does the household chores, and that she naps throughout the day. Tr. 1087-88.

At her second hearing, Plaintiff testified that she drives herself to appointments, the grocery store, and anytime she has to run errands as long as she is feeling well enough. Tr, 77. When asked why she believed she could not work, Plaintiff reiterated what she said at her previous hearing, that she lacks the energy and breath, and that she experiences brain fog due to both Lupus and her medications. Tr. 84. She further testified that she still cannot engage in any household chores for any meaningful amount of time, and that when she does attempt chores such as folding laundry or washing dishes, she has to take breaks. Tr. 85. She also continues to experience pain from her broken rib and naps throughout the day. Tr. 88-89. When asked about physical therapy, she stated it was not effective and that her doctor discontinued it because of her fatigue. Tr. 91-92.

The ALJ determined that the Plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely

consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 23. The ALJ discounted Plaintiff's subjective symptom testimony because: (1) her medical records did not contain evidence of atrophy or muscle wasting; (2) she was able to work at substantial gainful activity levels in 2019; (3) she exhibited some normal pulmonary function; (4) she responded well to treatment; (5) and her subjective pain complaints were exaggerated.

    1. Treatment

A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. §§ 404.1529(c)(3). For example, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

Here, the ALJ relied on reports of the Plaintiff's physical symptoms improving with treatment, noting that her physical therapist believed she would continue getting stronger, making her weight bearing activities easier, so long as she continued with her exercises. Tr. 23-24, 715.

Plaintiff began physical therapy on January 13, 2020, where she presented with complaints of weakness and fatigue, pain in her joints but mostly in her hips and shoulders, and that she was taking no medication other than CBD for her pain. Tr. 722. Following her first session, she admitted she was walking more than normal even though she was not doing her exercises, and that she was sore following her first session. Tr. 720. In order to compensate for her soreness, her exercises were adjusted, and she tolerated these exercises well. Tr. 721. At her third appointment on February 3, 2020, Plaintiff experienced a popping sensation in her lower

back causing her to experience more pain when engaging in her squatting exercise, but that it was tolerable. Tr. 719. She also claimed that her upper extremity exercises were going very well, and she was able to reengage with her painting, noting that she no longer experienced any arm pain. *Id*. At her fourth session on February 12, 2020, she tolerated her exercises well, and despite being sick and stating that "everything is hurting today," was able to perform max exertion for her quads and hamstrings with no lower back pain. Tr. 714-15. Plaintiff's last session was on March 9, 2020, where she stated her shoulder stretches were helping with mobility and stiffness, and demonstrated increased upper and lower extremity resistance, was more stable on her feet, and progressed her balancing exercises to single leg stances with head turns. Tr. 783. On June 1, 2020, Plaintiff was discharged from physical therapy because following COVID-19 procedures, her physical therapist was unable to get in contact with her to reestablish appointments. Tr. 780-81.

Plaintiff argues that her improvement through physical therapy was not a legitimate basis upon which to discount her testimony because, at her last session, Plaintiff was rated poorly in her ability to perform household tasks without feeling exhausted the rest of the day, and in her ability to go on family outings/activities without feeling restricted due to weakness or fatigue. Pl.'s Opening Br. 16, ECF 9. She further argues that this is consistent with her testimony that she is no longer able to engage in hobbies or household chores, and with lay witness testimony from her daughter, stating the same. *Id*. (citing Tr. 22, 424-27, 461, 733, 1087-92). This Court disagrees.

While Plaintiff was rated poorly at her last session, she had improved from her first session. Tr. 721, 733. Her physical therapist specifically noted that she would continue getting stronger so long as she continued with her exercises. Tr. 715. Unfortunately, Plaintiff did

not follow through. *See* 780-81. While COVID may have presented problems in the form of cancelled appointments for a three-month period from March to June, her physical therapist was unable to reestablish contact, while Plaintiff stated that her doctor discontinued her physical therapy because it was not effective, which records contradict. Tr. 91-92, 780-81, 1084-86. Even with cancelled appointments, Plaintiff was supposed to continue exercises at home, which she did not. As for her inability to engage in her hobbies, Plaintiff admitted being able to paint and not experience any pain or discomfort in her upper extremities. Tr. 719. Notably, Plaintiff testified that she could not take any pain medication, including Tylenol, yet records show that over the counter pain relievers were prescribed. Tr. 670, 922, 1092.

Given the above, the ALJ's finding that Plaintiff's impairments related to her weakness improved with treatment is supported by substantial evidence.

### 2. Inconsistent Medical Record

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). While an ALJ may also consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain," *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), they cannot reject subjective pain testimony solely on that basis. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

The ALJ rejected Plaintiff's testimony regarding her shortness of breath, extreme

fatigue, and pain because she did not have any signs of muscle atrophy or wasting, she was able to work at substantial gainful activity levels in 2019, her subjective pain complaints were exaggerated, and she exhibited normal pulmonary function during clinical testing. Tr. 23-24.

Plaintiff argues that the ALJ is incapable of making a judgment regarding muscle atrophy or weakness because they are not a medical professional, nor does any medical record indicate Plaintiff would have any sort of muscle atrophy or wasting due to her impairments, that her gainful activity level in 2019 was an unsuccessful work attempt and cannot be used as a basis for rejection of her testimony, that her pain levels were not necessarily exaggerated due to her "excessive sympathetic drive," and that while she exhibited some normal pulmonary function, the few instances cited by the ALJ did not show broader overall improvement. Pl.'s Opening Br. 13-17, ECF 9.

The Commissioner did not respond to Plaintiff's unsuccessful work attempt argument, and therefore concedes the point. *See Justice v. Rockwell Collins, Inc.*, 117 F.Supp.3d 1119, 1134 (D. Or. 2015), aff'd, 720 Fed.Appx. 365 (9th Cir. 2017) ("if a party fails to counter an argument that the opposing party makes . . . the court may treat that argument as conceded") (citation and internal quotations and brackets omitted); *see also Johnny T. v. Berryhill*, No. 6:18-CV-00829- AA, 2019 WL 2866841, at *2-3 (D. Or. July 2, 2019) ("[T]he Commissioner's failure to substantively respond to [the p]laintiff's arguments regarding his symptom testimony, medical opinion evidence, and lay witness testimony constitutes a concession of those issues...."); *Krista B. v. Comm'r, Soc. Sec. Admin.*, No. 3:20-CV-01822-HL, 2021 WL 5235969, at *3-4 (D. Or. Nov. 10, 2021).

To Plaintiff's first argument, the Commissioner argues that muscle atrophy may be expected when a claimant alleges an inability to stand or walk for even short amounts of time

each day. Def.'s Br. 7, ECF 11 (citing SSR 16-3p, *available at* 2017 WL 5180304, at *5; *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) ("In addition, the ALJ noted that Meanel did not exhibit muscular atrophy or any other physical signs of an inactive, totally incapacitated individual.") In this instance, the Commissioner is incorrect. In *Meanel*, the ALJ's additional finding was bolstered by the medical opinion of Plaintiff's examining physician which contradicted the plaintiff's complaints in that case. 172 F.3d at 1114. Without the addition of the medical opinion, such a finding by the ALJ would have been outside of his purview, even more so when no medical provider believed muscle atrophy would have resulted from Plaintiff's condition. *See Rawa v. Colvin*, 672 Fed.Appx. 664, 667 (9th Cir. 2016) (finding that rejecting pain testimony because there were no signs of muscle atrophy without citing any medical finding or opinion in the record is beyond the scope of the ALJ's authority); *see also Amy F. v. Comm'r, Soc. Sec. Admin.*, 2022 WL 2063991, at *3 (D. Or. June 2022) ("An unsupported expectation of generalized muscle atrophy was not a clear and convincing reason to discount Plaintiff's testimony.") As such, expected muscle atrophy was not a clear and convincing reason to reject Plaintiff's symptom testimony.

Plaintiff next argues that a medical record stating that her "pain is from heightened awareness and from an excessive sympathetic drive," does not necessarily mean that her pain is exaggerated. Pl.'s Opening Br. 17, ECF 9 (citing Tr. 23, 979). The Commissioner argues that this record, along with others, introduces inconsistencies because Plaintiff attributed this pain to her lupus. Def.'s Br. 7-8, ECF 11 (citing Tr. 979 (Plaintiff "does not clearly have lupus at this time"); Tr. 1004 ("unlikely to be lupus"). Even if Plaintiff's pain was incorrectly attributed to lupus, she was still experiencing that pain. Not only that, but her primary concerns were her breathing, fatigue, and an unhealed broken rib, all of which could contribute to any pain

she was feeling. As such, this was not a clear and convincing reason to discount her testimony.

Lastly, Plaintiff argues that the ALJ singled out three instances of normal pulmonary function despite the record as a whole supporting her disabling allegations. Pl.'s Opening Br. 14-16, ECF 9. The Commissioner argues that the ALJ did not "improperly single out a few periods of temporary well-being from a sustained period of impairment" to discredit Plaintiff's testimony, but that the ALJ examined Plaintiff's impairments over several years. Def.'s Br. 8, ECF 11 (citing *Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014)). The ALJ cited records from December 2018, November 2019, and February 2020, showing that Plaintiff had normal pulmonary function. Tr. 554, 673, 677, 718. However, the vast majority of Plaintiff's records indicate that her chest pain contributed to her shortness of breath, that her coughing increased her pain because it affected her unhealed broken rib, that her broken rib contributed to her shallow breathing, that she frequently had episodes of shortness of breath, and there was concern regarding a rapid increase in Plaintiff's pulse when ascending only a few stairs. Tr. 472, 497, 600, 646-47, 666, 670, 679-80, 717, 786, 920, 938, 943, 954, 995. As such, the ALJ's rejection of Plaintiff's testimony based on a few instances of normal function cannot serve as a specific, clear and convincing reason to reject Plaintiff's subjective symptom testimony.

In sum, while the ALJ could not rely on muscle atrophy, normal pulmonary function, exaggerated pain complaints, and an unsuccessful work attempt as specific, clear and convincing reasons to discount Plaintiff's subjective symptom testimony, the ALJ did not err in relying on Plaintiff's improvement with treatment. Since the ALJ provided at least one valid reason for discrediting plaintiff's symptom testimony, the ALJ's error in relying on invalid reasons was harmless. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (finding that the ALJ's reliance on invalid reasons was harmless error because the

ALJ provided other valid reasons that support the ALJ's credibility determination); *e.g. Jones v. Saul*, 818 F. App'x 781, 781-82 (9th Cir. 2020) (holding that the ALJ provided clear and convincing reasons for discounting the claimant's testimony and thus "[a]ny error in the ALJ's additional reasons for discounting [claimant's] symptom testimony [were] harmless").

## II.    Medical Opinions

Plaintiff alleges that the ALJ failed to properly discount the medical opinion of Rachel Elsasser, D.O., on the basis of consistency and supportability. Pl.'s Opening Br. 4-11, ECF 9. Specifically, she argues that her medical records support Dr. Elsasser's functional assessments. Pl.'s Opening Br. 6-10, ECF 9.

### A.    Legal standards

For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan 18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence

to support their opinions. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)- (3). The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(c)(b). The court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."). *Id.*

**B.    Rachel Elsasser, D.O.**

Plaintiff argues that the ALJ improperly discredited Dr. Elsasser's opinion regarding all of her assessed functional limitations. The ALJ found that Dr. Elsasser's opinion was unpersuasive because it was inconsistent with and unsupported by the medical evidence, and because she provided no explanation for the assessed limitations. Tr. 25.

Dr. Elsasser provided a medical opinion on July 1, 2021. Tr. 982. In the report, Dr. Elsasser assessed Plaintiff's limitations as they pertain to what she could do in an eight-hour workday. *Id*. Dr. Elsasser noted that Plaintiff could sit for six hours, but only two consecutive

hours; she could stand for four hours, but only for one hour at a time; she could walk for one hour but could not do so consecutively; and she did not need to lie down. *Id*. Dr. Elsasser also found that Plaintiff could occasionally lift up to 20 pounds and frequently lift up to 10 pounds. *Id*. Plaintiff could also use her hands for grasping, pushing and pulling, and fine manipulation. *Id*. Lastly, Plaintiff could occasionally reach, bend, and climb. *Id*. Dr. Elsasser provided only a check box style report with no narrative explanations.

The ALJ discounted Dr. Elsasser's medical opinion because it was inconsistent with the medical evidence, it introduced inconsistency, it failed to point to any diagnosis to support the limitations assessed, and inconsistent with Plaintiff's improvement with treatment. Tr. 25. This Court agrees.

First, Dr. Elsasser's opinion lacked any explanation. *See Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion."); *see also Orn V. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); 20 C.F.R. § 404.1527(c)(3). While Dr. Elsasser's opinion could not be rejected simply because it is in check box form, "the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (cleaned up) (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). Because the ALJ rejected Dr. Elsasser's opinion because it lacked any explanation in its check-the-box format, the ALJ's reasoning was supported by substantial evidence.

Second, the ALJ rejected Dr. Elsasser's opinion because it made no mention of Plaintiff's need for an assistive device to ambulate, which is inconsistent with Plaintiff's testimony. Tr. 25. Plaintiff argues that Dr. Elsasser's opinion did not contain a limitation

including an assistive device because such a limitation was unwarranted, and that its exclusion did not introduce a level of inconsistency. Pl.'s Opening Br. 5, ECF 9. The Commissioner is correct. Dr. Elsasser's opinion contains no information regarding whether Plaintiff needs an assistive device, nor whether an assistive device was included in the assessed limitations. The fact that Plaintiff's gait and balance improved with physical therapy treatment, and that she never appeared with said device at appointments, indicates that Plaintiff's need for an assistive device was unsupported by the medical evidence, thereby undermining her testimony.

Finally, Plaintiff argues that Dr. Elsasser's medical opinion is supported by numerous records in evidence, including her own. Pl.'s Opening Br. 6-10, ECF 9. However, a review of Dr. Elsasser's medical records indicate that she would have no support for the assessed limitations, nor any indication that she reviewed Plaintiff's medical records in their entirety when formulating her opinion. For example, Dr. Elsasser completed exactly one physical examination that included Plaintiff's musculoskeletal condition, and it was conducted because Plaintiff reported significant low back pain because of a back spasm. Tr. 984-985. This exam was conducted in June 2021, and her back pain had resolved by her next appointment in August, where she made no mention of back pain. Tr. 988-89. Prior to Plaintiff's reported back pain, Dr. Elsasser never evaluated Plaintiff's physical abilities, except to note that her pulmonary function was mostly normal, along with her gait and neurological condition, and that Plaintiff's unhealed rib still caused some pain and discomfort. Tr. 716, 785-86, 939, 942-43, 953-54, 1016-17.

Given the above, the ALJ's rejection of Dr. Elsasser's medical opinion as supported by substantial evidence.

### III.   Lay Witness Testimony

Plaintiff contends that the ALJ erred by failing to properly address the lay witness

testimony provided by Plaintiff's daughter by failing to provide reasons germane to the witness. Pl.'s Opening Br. 17-19, ECF 9.

Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citation and internal quotation omitted). The ALJ must provide "reasons germane to each witness" to reject such testimony. *Id*. (citation and internal quotation omitted). However, failure to discuss or weigh third-party testimony is harmless where the ALJ validly discounts similar evidence. *See id*. at 1118-19 (ALJ's failure to comment upon lay witness testimony is harmless where "the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited").

In the third-party report, Plaintiff's daughter stated that Plaintiff cannot engage in any household chores and, if she does, she gets extremely tired and sometimes hurts herself in the process. Tr. 461. She stated that Plaintiff cannot grocery shop alone, that she uses motorized carts when she shops, and that even walking from the parking lot to the store exhausts her for the next few days. *Id*. She further explained that Plaintiff cannot speak for long periods or get excited because she will lose her breath, precipitating the need for breaks between conversations. *Id*.

The Commissioner argues that the ALJ discounted the lay witness testimony because it was inconsistent with Plaintiff's medical records, and this court agrees. Def.'s Br. 9-10, ECF 11; Tr. 22. For example, the lay witness testimony states that Plaintiff has difficulty walking and standing for long periods, that she gets exhausted for several days walking from the parking lot to the store. However, Plaintiff's records show that she improved with physical

therapy to the point that she could walk around the grocery store without issue, that she could paint for an extended period without discomfort in her arm, and that she was increasing her activity levels. Tr. 22, 719-21, 783. The lay witness testimony stated that Plaintiff does not grocery shop alone, yet in her function report she noted that she grocery shops alone. Tr. 425. Plaintiff's daughter further stated that Plaintiff is unable to engage in any sort of daily activities, such as household chores, yet Plaintiff worked at substantial gainful activity levels from October 2021 to September 2022. Tr. 22, 402-03.

Because the ALJ rejected the lay witness testimony because it was inconsistent with Plaintiff's medical records, the ALJ provided a reason germane to the witness, and therefore the ALJ has not erred.

## CONCLUSION

For the reasons set forth in this opinion, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 19th day of February, 2025.

*/s/ Adrienne Nelson*
Adrienne Nelson
United States District Judge